797 F.2d 1137
 14 Soc.Sec.Rep.Ser. 389, Medicare&Medicaid Gu 35,535
PATCHOGUE NURSING CENTER, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., as Secretary of the United States
Department of Health and Human Services, and David
Axelrod, as Commissioner of the New York
State Department of Health,
Defendants-Appellees.
 No. 1019, Docket 86-6036.
 United States Court of Appeals,
Second Circuit.
 Argued March 13, 1986.
Decided July 25, 1986.
 
 Frederic Block, Smithtown, N.Y. (Block & Hamburger, Smithtown, N.Y., Jeffrey Russ, New York City, Richard Hamburger, Smithtown, N.Y., Steven B. Aptheker, and Judith Stoll, New York City, of counsel), for plaintiff-appellant.
 Patricia Galvin, Asst. U.S. Atty., E.D. of New York, Brooklyn, N.Y. (Reena Raggi, U.S. Atty. for the E.D. of New York, Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., Annette Blum, Regional Counsel United States Dept. of Health and Human Services, Connie Raffa, Asst. Regional Counsel, New York City, of counsel) for defendant-appellee, Otis R. Bowen, M.D.
 Judith Kaufman, Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Howard L. Zwickel, Asst. Atty. Gen., New York City, of counsel) for defendant-appellee David Axelrod.
 Joel M. Hamme, Jack N. Goodman and Paul F. Leonard, Jr. (Pierson, Ball & Dowd, Washington, D.C.) submitted a brief for the American Health Care Association, amicus curiae.
 Cornelius D. Murray, Thomas F. Gleason, Sarah W. Birn, and Michael Rhodes-Devey (O'Connell and Aronowitz, P.C., Albany, N.Y.) submitted a brief for New York State Health Facilities Association, Inc., amicus curiae.
 Before CARDAMONE, PIERCE, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Appellant Patchogue Nursing Center ("Patchogue") appeals from an order of the United States District Court for the Eastern District of New York, (Weinstein, Ch.J.), denying in pertinent part its motion for a preliminary injunction. Appellant sought injunctive relief barring appellees, Otis R. Bowen, M.D., as Secretary of the United States Department of Health and Human Services (the "Secretary" or "HHS"), and David Axelrod, as Commissioner of the New York State Department of Health ("DOH"), from imposing the intermediate sanctions established by section 916 of the Omnibus Reconciliation Act of 1980, 42 U.S.C. Sec. 1395cc(f), banning Medicaid and Medicare reimbursement for new admissions to skilled nursing facilities. Appellant contends that it is entitled to preliminary injunctive relief because (1) section 1395cc(f) cannot be utilized until the Secretary promulgates implementing regulations; (2) the Secretary has violated section 1395cc(f) by failing properly to follow the statutory due process procedures before adjudging appellant noncompliant with the requirements for participation as a provider of services in the Medicare program, see 42 U.S.C. Sec. 1395x(j); 42 C.F.R. Sec. 405.1101 et seq.; and (3) the Secretary deprived appellant of a constitutionally protected property interest in violation of constitutional due process standards.
 
 
 2
 For the reasons stated below, we affirm.
 
 BACKGROUND
 
 3
 Patchogue is a "skilled nursing facility," 42 U.S.C. Sec. 1395x(j), authorized to provide services to at most 120 Medicare or Medicaid beneficiaries. Patchogue originally was accepted as a provider of services in the Medicare program effective January 1, 1977, and was issued its most recent provider agreement effective December 11, 1984.
 
 
 4
 On January 22, 1985, DOH, in accordance with 42 U.S.C. Sec. 1395aa, conducted the first of several onsite surveys at Patchogue to determine compliance with the eighteen conditions of participation set forth at 42 U.S.C. Sec. 1395x(j) and 42 C.F.R. Sec. 1101 et seq. The state surveyors found Patchogue to be out of compliance with two conditions of participation: Governing Body and Management, 42 C.F.R. Sec. 405.1121, and Dietetic Services, 42 C.F.R. Sec. 405.1125.
 
 
 5
 The DOH surveyors held an exit conference with Paul Maggio, Administrator and owner of Patchogue, on February 8, 1985, to advise him of the survey findings. On February 13, 1985, DOH sent Patchogue a Statement of Deficiencies detailing the areas of noncompliance and providing citations to applicable regulations. In a letter accompanying the Statement, DOH requested a plan of correction from Patchogue and informed Patchogue of the possible sanctions for continued noncompliance.
 
 
 6
 DOH conducted an unannounced revisit survey of Patchogue on March 8, 1985. The surveyors apprised Mr. Maggio of their findings at an exit conference and, in a written statement, enumerated eleven deficiencies relating to the standard of "sanitary conditions," 42 C.F.R. Sec. 405.1125(g).
 
 
 7
 Patchogue submitted a Plan of Correction dated March 18, 1985 to DOH. By letter dated May 13, 1985, DOH rejected the Plan of Correction as "unacceptable" and requested a revised Plan of Correction. DOH attached a statement to this letter explaining why the Plan was adjudged inadequate.
 
 
 8
 By letter dated June 6, 1985, DOH advised HHS that Patchogue was not in compliance with two conditions of participation and recommended that the intermediate sanction banning reimbursement for new Medicare and Medicaid admissions be imposed, 42 U.S.C. Sec. 1395cc(f). Patchogue was notified of the possible ban by letter dated June 14, 1985. Patchogue also was informed that it could request an informal hearing in order to present evidence contradicting the finding of noncompliance.
 
 
 9
 On July 22, 1985, an informal hearing was held at which Patchogue denied that it was ever out of compliance with the conditions of participation and accused DOH of incompetence and prejudice. Patchogue requested that another revisit survey be conducted and that a neutral federal surveyor accompany the state survey team. At the hearing DOH furnished Patchogue with a copy of an interim survey report regarding the March 8, 1985 resurvey which it had previously failed to provide.
 
 
 10
 A revisit survey was conducted on July 31 and August 1, 1985 by DOH surveyors accompanied by a neutral Federal Nutrition Consultant and DOH officials from Albany. The survey disclosed that the conditions of Governing Body and Management and Dietetic Services remained out of compliance. An exit conference was held on August 1, 1985 at which DOH officials advised Mr. Maggio and his staff of their findings. DOH sent a copy of its interim survey report as well as a Statement of Deficiencies to Patchogue. The Federal Nutrition Consultant sent a copy of her report which concurred with DOH's findings to Mr. Maggio's attorney.
 
 
 11
 On September 24, 1985, HHS notified Patchogue of its intent to institute a ban on reimbursement and offered Patchogue an opportunity to address the results of the July 31/August 1 survey in an informal hearing.
 
 
 12
 A second informal hearing was held at Patchogue's request on October 11, 1985. On January 2, 1986, HHS issued a decision concluding that Patchogue had not complied with federal regulations and that a ban on reimbursements should issue pursuant to 42 U.S.C. Sec. 1395cc(f) with public notice scheduled for January 8, 1986.
 
 
 13
 On January 14, 1986, United States District Court Judge Leonard D. Wexler issued an order to show cause and a temporary restraining order. Chief Judge Weinstein denied the request for a preliminary injunction after an evidentiary hearing.
 
 DISCUSSION
 
 14
 Medicaid, 42 U.S.C. Sec. 1396 et seq., is the program of medical assistance to indigents who are recipients of either Aid to Families with Dependent Children ("AFDC", 42 U.S.C. Sec. 601 et seq.) or Supplemental Security Insurance program for aged, blind or disabled poor ("SSI", 42 U.S.C. Sec. 1381 et seq.). Medicaid is financed by state and federal funds, but administered by the states. Although federal law prescribes requirements for each state to receive federal money, a state has considerable discretion in designing the contours of its program.
 
 
 15
 Medicare, 42 U.S.C. Sec. 1395 et seq., is a nationally uniform program of health insurance for the aged and, since 1973, the disabled. It is completely financed and administered at the federal level by the Social Security Administration and certain insurance carriers called "fiscal intermediaries," who act as the Secretary's agents to pay institutional providers like Patchogue Nursing Center.
 
 
 16
 The statutory provision at issue herein provides, in pertinent part:
 
 
 17
 (1) Where the Secretary determines that a skilled nursing facility which has filed an agreement pursuant to subsection (a)(1) of this section or which has been certified for participation in a plan approved under subchapter XIX of this chapter no longer substantially meets the provisions of Sec. 1395x(j) of this title, and further determines that the facility's deficiencies--
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 (B) do not immediately jeopardize the health and safety of its patients, the Secretary may, in lieu of terminating the agreement or certification of the facility, provide
 
 
 21
 that no payment shall be made under this subchapter (and order a State agency established or designated pursuant to Sec. 1396(a)(5) of this title to administer or supervise the administration of the State plan under subchapter XIX of this chapter to deny payment under such subchapter XIX) with respect to any individual admitted to such facility after a date specified by him.
 
 
 22
 (2) The Secretary shall not make such a decision with respect to a facility until such facility has had a reasonable opportunity, following the initial determination that it no longer substantially meets the provisions of Sec. 1395x(j) of this title, to correct its deficiencies, and, following this period, has been given reasonable notice and opportunity for a hearing.
 
 
 23
 (3) The Secretary's decision to deny payment may be made effective only after such notice to the public and to the facility as may be prescribed in regulations, and its effectiveness shall terminate (A) when the Secretary finds that the facility is in substantial compliance (or is making good-faith efforts to achieve substantial compliance) with the provisions of section 1395x(j) of this title, or (B) in the case described in paragraph (1)(B), with the end of the eleventh month following the month such decision is made effective, whichever is made first. If a facility to which clause (B) of the previous sentence applies still fails to substantially meet the provisions of section 1395x(j) of this title, on the date specified in such clause, the Secretary shall terminate such facility's agreement or provide for termination of such facility's certification, notwithstanding the provisions of paragraph (2) of subsection (b) of this section, effective with the first day of the first month following the month specified in such clause.
 
 
 24
 42 U.S.C. Sec. 1395cc(f) (emphasis added).
 
 
 25
 A party seeking issuance of a preliminary injunction in this circuit has the burden of proving " '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Bell & Howell: Mamiya Co. v. Masel Supply Corp., 719 F.2d 42, 45 (2d Cir.1983) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).
 
 
 26
 The standard for appellate review of the grant or denial of a preliminary injunction is a limited one. A motion for preliminary injunctive relief is directed to the sound discretion of the trial judge; and a decision granting or denying that relief will not be disturbed unless it constitutes an abuse of that discretion. See, e.g., Bell & Howell, supra, 719 F.2d at 45.
 
 
 27
 In denying appellant's motion for a preliminary injunction in the instant case, the district court held that although "substantial harm ... will result to the plaintiff-[appellant] from the ban ...," plaintiff-appellant failed to demonstrate a "substantial likelihood of success" on the merits to justify imposition of an injunction. Hearing, January 27, 1986, Joint App. 318. The district court based its decision on the finding
 
 
 28
 that considering the negotiations back and forth and the various conferences and exhibits and other things referred to during the course of the testimony, that the plaintiff was fully advised of the complaint of the government, they were sufficient to warrant a ban. They constituted a series of detriments to the quality of life of the residents, with respect to dietary matters. Therefore, there is a substantial basis for the decision of the administrative agency....
 
 
 29
 Id. It should be noted that the district judge heard oral argument on four separate occasions in this case. The district court held a hearing on the preliminary injunction during which he heard the testimony of five witnesses including that of Mr. Maggio, the Administrator of Patchogue, as well as the representatives from both DOH and HHS who visited the facility.
 
 1. Irreparable Harm
 
 30
 Patchogue alleged that it would be harmed in two ways if injunctive relief were not granted: (1) Patchogue projected that it would lose $10,300 per month in federal funds and would suffer an additional actual loss of approximately $40,000 in state reimbursements; and (2) Patchogue predicted that its reputation as a quality facility would be destroyed by publication of notice of the ban. After taking the testimony of Patchogue's expert witness regarding potential economic harm and after hearing extensive argument on the likely consequences of and possible alternatives to publication in widely-circulated newspapers, the district court concluded that there is a risk of "substantial harm to plaintiff from the ban." Id. (emphasis added). This court need not address the question of whether the claim of irreparable harm is meritorious, because Patchogue has failed to sustain its burden of demonstrating either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships tipping in its favor.
 
 
 31
 2. Likelihood of Success on the Merits or a Fair Ground for Litigation and a Balance of Hardships in its Favor
 
 
 32
 a) Failure to Promulgate Regulations
 
 
 33
 The Omnibus Reconciliation Act of 1980, Pub.L.No. 96-499, Sec. 916(a), 94 Stat. 2623, 2623 (codified at 42 U.S.C. Sec. 1395cc(f)), which empowered the Secretary to discontinue Medicare reimbursement to noncompliant facilities was enacted on December 5, 1980. As of the date of oral argument,[1] the Secretary had failed to promulgate regulations defining either the grounds for the imposition of an intermediate sanction, 42 U.S.C. Sec. 1395cc(f), or the procedures for providing "notice to the public and to the facility." 42 U.S.C. Sec. 1395cc(f)(3).
 
 
 34
 While this court is troubled generally by such agency inaction since it often frustrates Congressional intent and leaves parties futiley floundering to comply with unknown and unknowable guidelines, this court disagrees with appellant's contention that a ban on reimbursement cannot be imposed in the absence of duly adopted regulations.
 
 
 35
 We hold that the statute is self-enforcing. In our view Congress chose precatory language in providing that "[t]he Secretary's decision to deny payment may be made effective only after such notice to the public and to the facility as may be prescribed in regulations." 42 U.S.C. Sec. 1395cc(f)(3) (emphasis added). By choosing the word "may," rather than 'shall,' 'must,' or other mandatory language, Congress allowed the Secretary to exercise discretion in deciding whether regulations were needed to effectuate the statute. The legislative history further supports our statutory construction. See, e.g., H.R. Rep. No. 1167, 96th Cong., 2d Sess. 1, 56 reprinted in 1980 U.S. Code Cong. & Admin. News 5526, 5569 ('The Secretary would be expected to define by regulation the grounds for the imposition of an intermediate sanction.' ) (emphasis added).
 
 
 36
 It should be noted that Congress takes a more compulsory stance in the legislative history regarding "public notification to potentially affected beneficiaries." Id. at 57, 1980 U.S. Code Cong. & Ad. News at 5570. The Report states: "[t]he Secretary would be required to promulgate regulations setting forth the procedures for implementing this provision." Id. (emphasis added). Despite the strength of this language, this court concludes that the failure to issue regulations defining the procedures for notifying beneficiaries does not preclude the use by the agency of section 1395cc(f) sanctions. In light of the precatory language elsewhere in the statute, and of the important policy considerations underlying the intermediate sanction provision, it is unlikely that Congress would forbid the use of the sanction merely because the agency failed to promulgate notification regulations where, as here, the agency clearly gave, and the provider undoubtedly had, de facto notice that a ban was impending.
 
 
 37
 An agency is authorized to carry out its statutory duty even in the absence of specific regulations. See SEC v. Chenery Corp., 332 U.S. 194, 201, 67 S.Ct. 1575, 1579, 91 L.Ed. 1995 (1947) ("It is true that ... the Commission might have promulgated a general rule dealing with this problem under its statutory rule-making powers ... [however] we did not mean to imply thereby that the failure of the Commission to anticipate this problem and to promulgate a general rule withdrew all power from that agency to perform its statutory duty in this case."); Abbott-Northwestern Hospital, Inc. v. Schweiker, 698 F.2d 336, 342 (8th Cir.1983) ("There is no question that an agency is authorized to carry out its statutory duty through the adjudication of an individual dispute even in the absence of specific regulation." (citations omitted))
 
 
 38
 As long as an agency proceeds in accordance with "ascertainable standards," Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir.1968), and provides a statement showing its reasoning when applying the standards, Environmental Defense Fund v. Ruckelshaus, 439 F.2d 584, 597 (D.C.Cir.1971), a court need not require formal rulemaking.
 
 
 39
 In the instant case, the Secretary has been utilizing an ascertainable standard--the regulations for determining compliance applicable in termination cases--of which Patchogue was made aware through conferences and notification letters. The Secretary has provided the facility with a detailed statement of deficiencies which specifically refers to the applicable state or federal provisions at issue. The Secretary has not acted with unfettered discretion, and thus appellant is incorrect in contending that appellees' actions are invalid because of the lack of duly promulgated regulations.
 
 
 40
 b) Compliance With Statutory Due Process Standards
 
 
 41
 Section 1395cc(f) provides an outline of the procedures that must be afforded before intermediate sanctions may be imposed. The statute requires: (1) an initial determination by HHS that a skilled nursing facility no longer substantially meets Medicare participation requirements; (2) a reasonable opportunity for the skilled nursing facility to correct the alleged deficiencies; and (3) "following this period, ... reasonable notice and an opportunity for a hearing." 42 U.S.C. Sec. 1395cc(f).
 
 
 42
 Appellant contends that (1) the Secretary's initial determination was defective since DOH provided reports to HHS which did not comply with the requirements of 42 C.F.R. Sec. 405.1903 and since the March 8, 1985 resurvey was conducted prior to Patchogue's submission of a Plan of Correction; (2) it was denied a "reasonable opportunity" to correct its deficiencies since the statement of deficiencies issued following the March 8th resurvey failed to indicate whether it supplemented or superseded the statement of deficiencies issued following the January 22nd survey and since the third survey (July 31-August 1) was conducted only nine days after Patchogue learned of the significance of the March 8th statement; (3) it was not afforded a full evidentiary hearing. In essence, appellant argues that it was without notice of its deficiencies and was denied a reasonable opportunity to remedy the problems.
 
 
 43
 Patchogue received a Statement of Deficiencies for each of the three surveys; interim reports regarding the March and July/August surveys; exit conferences with the surveyors following each survey; two pre-ban informal hearings; and a formal response of May 13, 1985 to its Plan of Correction. Patchogue also was contacted repeatedly by DOH and HHS administrators both by mail and by telephone and was informed thereby of its rights and of the possible penalties. The record is replete with evidence refuting appellant's contentions that it was without notice of its deficiencies and was denied an opportunity to implement an adequate plan of correction.
 
 
 44
 Furthermore, appellant is incorrect in asserting that section 1395cc(f) requires a full evidentiary pre-ban hearing. The legislative history of section 916(a) of the Omnibus Reconcillation Act reveals that Congress intended only to afford "the facility ... an opportunity to present its case at an informal hearing consistent with current practices." H.R.Rep. No. 1167, supra at 56, 1980 U.S.Code Cong. & Ad News at 5569. This reference to an "informal hearing consistent with current practices" contemplates the type of informal non-evidentiary administrative hearing afforded to facilities before their provider agreements are terminated. Providers are not entitled either under the Act or under constitutional due process standards to a full administrative hearing prior to termination of their provider agreement. See Case v. Weinberger, 523 F.2d 602 (2d Cir.1975); Sheepshead Nursing Home v. Heckler, 595 F.Supp. 992 (S.D.N.Y.1984); Kings Terrace Nursing Home v. Schweiker, 82-6470 slip op. (S.D.N.Y. October 25, 1985) (Knapp, J.); Schwartzberg v. Califano, 453 F.Supp. 1042 (S.D.N.Y.1978); see also Americana Healthcare Corp. v. Schweiker, 688 F.2d 1072 (7th Cir.1982), cert. denied, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983); Northlake Community Hospital v. United States, 654 F.2d 1234 (7th Cir.1981); Geriatrics, Inc. v. Harris, 640 F.2d 262 (10th Cir.) cert. denied, 454 U.S. 832, 102 S.Ct. 1295, 70 L.Ed.2d 109 (1981). Accordingly, appellant is not entitled to a pre-ban administrative hearing complete with a presiding administrative law judge and an opportunity to cross-examine witnesses when the less severe sanction provided for in 42 U.S.C. Sec. 1395cc(f) is imposed. See Nassau Nursing Home v. Heckler, 614 F.Supp. 1091, 1095 (E.D.N.Y.1985). The Secretary complied with statutory requirements by affording appellant an opportunity to present its Plan of Correction and to seek clarification of the described deficiencies at informal hearings on July 22, 1985 and October 11, 1985.
 
 
 45
 c) Compliance With Constitutional Due Process Standards
 
 
 46
 Health care providers have a constitutionally protected property interest in continued participation in the Medicare and Medicaid programs, see, e.g., Case v. Weinberger, supra, 523 F.2d at 606, and thus are entitled to some form of hearing before being finally deprived of that interest. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974).
 
 
 47
 In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court outlined the criteria by which to evaluate whether the administrative procedures provided are constitutionally sufficient:
 
 
 48
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 49
 Id. at 335, 96 S.Ct. at 903. Applying these criteria, the Supreme Court held that an evidentiary hearing prior to the termination of Social Security disability benefits is not required, id. at 343, 96 S.Ct. at 906-07, and that the pre-termination administrative review satisfied due process. Id. at 343-49, 96 S.Ct. at 906-10.
 
 
 50
 Initially, it should be noted that although Patchogue did not receive a full evidentiary hearing, it did receive an informal hearing prior to any adverse administrative action. As the Supreme Court has made clear, a pre-deprivation hearing "need not be elaborate ... and, in general, 'something less' than a full evidentiary hearing is sufficient...." Loudermill, supra, 105 S.Ct. at 1495 (quoting Mathews v. Eldridge, supra, 424 U.S. at 343, 96 S.Ct. at 906-07). "All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' ..., to insure that they are given a meaningful opportunity to present their case." Mathews v. Eldridge, supra, 424 U.S. at 349, 96 S.Ct. at 909 (quoting Goldberg v. Kelly, 397 U.S. 254, 268-69, 90 S.Ct. 1011, 1020-21, 25 L.Ed.2d 287 (1970)). In the instant case, Patchogue was fully capable of communicating its views to the decisionmakers and was accorded numerous opportunities over a period of months to demonstrate either orally or in writing that the ban should not be imposed. Appellant was supplied with detailed statements and was encouraged to contact agency administrators for assistance if necessary.
 
 
 51
 The process accorded herein is fully adequate and sufficiently protects the private interest--the financial and reputational well-being of the appellant--whose significance cannot be gainsaid. As stated above, there is no right to a full evidentiary pre-termination hearing although that sanction is more severe, has greater financial impact, and is for an indefinite period of time. See, e.g., Case v. Weinberger, supra, 523 F.2d 602. It certainly would be anomalous to impose more stringent procedural requirements where the Secretary has opted to impose a less severe sanction.
 
 
 52
 Appellant has argued against the applicability of the termination cases to the instant situation. In the termination cases, courts found that due process did not require a full hearing largely because of the immediate danger to the patients. The government interest in immediate action outweighed the financial interest of the nursing home. Appellant argues that ban cases are distinguishable since HHS may opt to impose the intermediate sanction of banning reimbursement only in cases where the facility's deficiencies "do not immediately jeopardize the health and safety of the patients." Thus, appellant contends that since there is no immediate danger to the health of nursing home residents, there is no compelling reason for denying plaintiff a full evidentiary hearing. This court disagrees with appellant's contentions.
 
 
 53
 The procedures at issue safeguard against mistaken decisions and the concomitant harm they would cause. Under section 1395cc(f), the Secretary may lift the ban if the deficiencies are corrected or if it is determined that the facility is making a good faith effort to achieve substantial compliance. Most importantly, it should be recognized that the interest of the government in protecting the health, safety, and welfare of the residents at Patchogue far outweighs any financial harm which appellant might suffer. While the residents may not be harmed immediately, they will be placed in jeopardy by extant conditions at Patchogue. At some point, the rights of the caretaker must end and the rights of the cared-for begin. Patchogue's deficiencies were documented over a long period of time and were of a severe nature. The court must accord substantial weight to the good-faith judgment of those carefully-trained individuals who supervise the skilled nursing facilities and administer the Medicare program.
 
 CONCLUSION
 
 54
 In view of the foregoing, this court finds that the district court's decision was based on the sound exercise of discretion and is supported by findings which are reasonable and which comport with the law. The district court's denial of injunctive relief is hereby affirmed.
 
 
 
 [1]
 The Department of Health and Human Services issued regulations entitled "Medicare and Medicaid Programs" and subtitled "Intermediate Sanction for Long-Term Care Facilities." 51 Fed.Reg. 24,484 (July 3, 1986). The promulgation of these regulations does not affect this court's conclusion that appellant failed to sustain its burden on a motion for preliminary injunctive relief. The regulations do not authorize any harsher financial penalties than those appellant sought to have enjoined nor do they entitle appellant to greater procedural safeguards than those afforded to date. The regulations merely formalize the procedures which the Secretary had been following in practice and which this court adjudges to be in accordance with statutory due process requirements and constitutional due process standards