(December 23, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN TIMCO, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Sullivan County (Traficanti, Jr., J.), rendered March 14, 1984, upon a verdict convicting defendant of the crimes of rape in the first degree, sodomy in the first degree and burglary in the second degree.

This appeal poses the question of whether the police, on their way to investigate a rape, legally stopped defendant walking along a highway within one-half mile of the crime scene to ascertain his identity and where he was coming from, and whether defendant's subsequent statements made to the police were voluntary.

At about 4:00 P.M. on September 22, 1983, the State Police were notified of a rape which occurred at the victim's home on Horseshoe Lake Road in the Town of Bethel, Sullivan County. Investigators Joseph Decker and Paul Muhlig were instructed to meet Senior Investigator Roger Fairchild at the scene. On their way, Decker and Muhlig saw defendant walking on Route 55 within one-half mile of the crime scene. Thinking that the rape had just occurred and because it was uncommon to see a person walking down this highway, they stopped and asked defendant for identification and where he was going. Defendant showed them his license and said he had just left the Boat Club, a local tavern, and was going home. The officers proceeded toward the victim's house; defendant continued walking down Route 55.

At the crime scene, Decker and Muhlig told Fairchild about defendant. The rapist had already been described as a white male with fairly long blond hair. This fit defendant's description. Decker and Muhlig supplied further details regarding defendant's hair and clothes. These were confirmed by the victim as conforming to that of her attacker. She also indi-

cated that the rapist had a foul body odor. Decker and Muhlig observed unique shoe marks near the victim's house where telephone wires had been torn. After checking the place the rapist told the victim he was bound for, Decker and Muhlig returned to the highway where they had first seen defendant. There they observed footprints on the ground similar to those they had seen at the victim's house. Decker and Muhlig then proceeded to defendant's home and knocked at his door. They informed defendant that they were investigating a rape and asked defendant if he would accompany them. Defendant agreed, went back in, dressed and got into the police car. The officers noticed his footwear and his acrid body odor. They proceeded to the victim's residence where Fairchild observed his footwear. The officers were directed by Fairchild to proceed with the investigation at the police barracks. The police had decided to detain defendant as a suspect once they had left the crime scene.

On the way, defendant asked where they were going and what was happening. Decker and Muhlig replied that they were going to the police station, that the victim of the rape would probably be there, that there probably would be a lineup and, if defendant was involved, the victim would identify him. Several moments later defendant began to cry and said he did not want to go to the station if the victim would be there. The police stopped the vehicle and informed defendant of his *Miranda* rights. Defendant acknowledged that he understood them, did not wish counsel and was willing to speak with the police. He subsequently confessed in the car and signed a written statement at the station. In addition, defendant made incriminating statements in a conversation with his mother during arraignment, which were heard by the police. The police secured a search warrant for defendant's home and seized his clothes. Defendant was subsequently indicted for the crimes of rape in the first degree, sodomy in the first degree and burglary in the second degree.

Defendant's motion to suppress statements made in the police car, at the station house and to his mother during arraignment, as well as the evidence seized pursuant to the search warrant, was denied. All of these were introduced in evidence at defendant's trial. Defendant was found guilty as charged and sentenced as a second felony offender to two concurrent prison sentences of 12½ to 25 years on the rape and sodomy convictions, and to a consecutive prison sentence of 7½ to 15 years on the burglary conviction.

Defendant contends that the initial stop on Route 55 was

illegal and, therefore, any evidence subsequently obtained from him was inadmissible as the " 'fruit of the poisonous tree' " *(Wong Sun v United States,* 371 US 471, 488). We disagree. When a stop of a person occurs to secure identification, this is a seizure *(Brown v Texas,* 443 US 47). The Fourth Amendment requires that all such seizures be "reasonable". The reasonableness of the stop turns on the balance between the public's interest in law enforcement and the individual's right to be free from arbitrary interference on the part of the police *(United States v Brignoni-Ponce,* 422 US 873, 878). Thus, the question here is whether Decker and Muhlig acted reasonably based on the facts available to them and whether their actions were appropriate. We hold that they behaved reasonably. Acting on the complaint that a rape had occurred and observing defendant on an isolated road not normally traveled by pedestrians, within close proximity to the crime scene, Decker and Muhlig possessed sufficient facts to support a suspicion that defendant could be involved in the rape. Their initial stop of him was legal and constituted good police work.

As to defendant's inculpatory statements, we find that they were properly admitted into evidence. Defendant's initial statements to police made in the police car while on the way to the station were unsolicited. These statements were spontaneously made by defendant; they were not the product of police questioning *(see, People v Bryant,* 59 NY2d 786). The rest of defendant's inculpatory statements were repetitions of this first confession. We also find no merit in defendant's contention that police statements regarding what would happen at the station house were merely a ruse designed to evoke incriminating statements from defendant. There is simply no evidence to support this contention. The People met their burden of proving that defendant's confessions were voluntarily made *(see, People v Huntley,* 15 NY2d 72, 78).

Finally, defendant urges this court to exercise its powers under CPL 470.15 (2) (c) to modify his sentence as a matter of discretion in the interest of justice. Absent a clear abuse of discretion, this court will not intrude on the sentencing court's prerogative. We find that the record supports County Court's sentence; defendant has a prior criminal record, and the instant crime was brutal—defendant attacked a young defenseless mother tending her young child and violated the sanctity of her home. We decline to intervene under such circumstances.

There is no merit in the other issues raised by defendant.

Judgment affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.