**PLAZA HEALTH LABORATORIES, INC., Plaintiff,**

v.

**Cesar A. PERALES, Commissioner of the New York State Department of Social Services, and New York State Department of Social Services, Defendants.**

**No. 88 CIV. 8930 (PKL).**

United States District Court,
S.D. New York.

Jan. 3, 1989.

Roberta C. Pike, Richard S. Bernstein, New York City, for plaintiff.

Robert J. Schack, Carol Schecter, Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

This action is brought pursuant to 42 U.S.C. § 1983, alleging various constitutional violations, including violations of the due process clause of the fourteenth amendment, and the *ex post facto* clause. Plaintiff seeks injunctive relief and damages.

Plaintiff moved for a preliminary injunction by way of order to show cause, signed by this Court on December 16, 1988, and returnable December 29, 1988. Based on the following findings of fact and conclusions of law, plaintiff's motion is denied.

*Findings of Fact.*

The essential facts relative to this injunction are not in dispute, and are briefly summarized here. Plaintiff Plaza Health Laboratories, Inc. ("Plaza") is a licensed clinical medical laboratory. It was organized under the laws of New York in 1985, and, since January, 1988, has been performing various medical laboratory services for physicians and clinics throughout the metropolitan area.

The defendant New York State Department of Social Services (the "Department") is the "single state agency" charged with administration of New York's program of Medical Assistance for Needy People under Article 5, Title 11, of the New York Social Services Law and 42 U.S.C. § 1396a *et seq.* That program is commonly called "Medicaid." Medicaid is a jointly funded federal-state program, providing for the furnishing of medically necessary care, services and supplies to the needy and impoverished of the State. Plaza was a participant in the New York Medicaid system, providing its services to Medicaid recipients and receiving Medicaid payments as payment in full.

Plaza provided services for both Medicaid and non-Medicaid patients. It provides laboratory testing services for approximately 40 patients daily, twenty-five percent of whom are Medicaid recipients. Plaza maintains a weekly payroll of approximately $6000, and employs approximately 20 persons, including a number of licensed laboratory technicians.

Plaza has service relationships with many physicians and clinics located in low-income areas. Those physicians and clinics refer individual patients to Plaza for medical testing, which is often of a daily or regular nature. Plaza is a minority-owned enterprise, and approximately 70% of its employees are minority. Proficiency ratings by state and city administrative agencies have consistently been high; there is no issue as to the competency of Plaza's performance in its specific medical testing capacity.

On November 18, 1988, Plaza and Geronimo B. Villegas ("Villegas"), an employee, 50% shareholder, and former officer of Plaza, were indicted in New Jersey for purposely and knowingly causing the release of hazardous waste and harmful and destructive substances, including biologically infectious and pathogenic viruses which pose a threat to human health, and for willful and negligent discharge of pollutants into the Hudson River. The indictment charges that the illegal waste release occurred "on or about June 18, 1988 and on or about September 25, 1988."

That indictment consists of four counts against Plaza and Villegas, all arising out of the same event. Essentially, it is charged that Villegas improperly dumped allegedly hazardous wastes from the laboratory into dumpsters in New Jersey. Plaza alleges in this proceeding that Villegas' actions were without the knowledge or au-

thorization of Plaza or its President, Dennis Chaundra ("Chaundra"). Exhibit B, attached to Affidavit of Dennis Chaundra, sworn to on December 16, 1988 ("Chaundra Affidavit").

By letter dated November 23, 1987, the Department notified Plaza that, pursuant to 18 NYCRR § 515.7(b), it would be suspended from participation in the Medicaid program. That suspension was to become effective five days thereafter, pending outcome of the criminal proceeding. The stated reason for that suspension was the charge of a crime "relating to the furnishing or billing for medical care, services or supplies." Exhibit B, attached to Affidavit of Raul A. Tabora, Esq., sworn to on December 28, 1988 ("Tabora Affidavit"). The letter did not explicitly refer to the New Jersey indictment.

Plaza was given the opportunity to submit arguments and written documentation within 30 days of the date of notice on the following issues: (1) whether the determination to sanction was based upon a mistake of fact; (2) whether any crime charged in an accusatory instrument, or a conviction of a crime, resulted from the furnishing of, or billing for medical care, services or supplies; and (3) whether the sanction imposed was appropriate.

Plaza appealed the Department's action by letter dated December 22, 1988. The Department will consider that appeal and render a decision shortly. Tabora Affidavit ¶ 12. Meanwhile, Plaza made the present application to this Court.

As a result of the termination of Plaza's participation in the Medicaid program, its financial viability has been threatened. Plaza cannot now perform services for Medicaid patients. Physicians who typically refer both Medicaid and non-Medicaid patients for medical laboratory testing have begun to look to other laboratories who can handle all of their referrals, and may continue those referral relationships even if Plaza is ultimately exonerated.

As a result of this drain, Plaza has had to lay off ten, or 50%, of its employees. The relationship with the remaining employees is strained; some have allegedly sought employment elsewhere because of the uncertainty of Plaza's continued existence. The reduction in staff has also affected the efficiency of Plaza's performance, further jeopardizing its client base.

*Conclusions of Law.*

■ As the Second Circuit has often noted, a preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." *Medical Society of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977); *see Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 59 (2d Cir.1979); *Gerard v. Almouli,* 746 F.2d 936 (2d Cir.1984). To obtain a preliminary injunction, the movant must generally demonstrate:

> (a) irreparable harm; and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to be a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Inverness Corporation v. Whitehall Laboratories,* 819 F.2d 48, 50 (2d Cir.1987). The burden upon plaintiff to establish preliminary injunctive relief is heavy, and "where the grant of interim relief may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond, plaintiffs undertake an even greater burden of persuasion." *Medical Society of the State of New York v. Toia,* 560 F.2d at 538.

Defendant claims that the "fair ground of litigation" test in not applicable to the present situation, because the preliminary injunction implicates the public interest. In such a case, "more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by a court order." *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981). The Court agrees that plaintiff here must show a likelihood of success on the merits. *See, Medical Society v. Toia,* 560 F.2d at 538; *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir.1973).

*Likelihood of Success on the Merits.*

Plaintiff asserts three constitutional bases for its claimed relief. Essentially, plaintiff claims that (1) the state regulations and law that justified termination of Plaza's participation in Medicaid had an impermissible *ex post facto* effect, as applied to it; (2) plaintiff was denied due process through deprivation of a property interest without a hearing; and (3) the New York law violates due process because it imposes sanctions based upon charge, not conviction, of a crime.

With regard to the likelihood of success on the underlying claims, the Court initially notes problems with a suit against the State, as an entity, under § 1983. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Damage claims asserted against defendant Perales, in his official capacity only, also implicate Eleventh Amendment concerns. Defendant raises questions as to this District being the proper venue, which may become the basis of a Fed.R.Civ.P. 12 motion to dismiss. Furthermore, examination of the merits of plaintiff's actual asserted bases for injunctive relief do not reveal a likelihood of success.

A. Ex Post Facto Clause.

The crimes charged against Villegas and Plaza in New Jersey would be felonies in New York under N.Y.Envtl.Conserv. § 71–2704(2)(c). That law, making those acts felonious in New York, became effective on November 1, 1988. Prior to that, the acts would have been a violation, but not a felony, under New York law. As noted, the notice of suspension by the Department occurred on November 23, 1988. The acts that formed the basis of the indictment in New Jersey occurred in June and September of 1988.

The Department suspended Plaza's participation in Medicaid under current 18 NYCRR 515.7(b) [1]. That regulation provides that the Department will immediately suspend a provider's participation in Medicaid, upon the Department's "receiving notice" that an indictment has been filed which charges a provider with an act that would be a felony under the laws of New York, and which "relates to or results from (1) furnishing ... medical care, services or supplies; or (2) participation in the performance of management or administrative services relating to furnishing medical care, services or supplies."

■ The Constitution prohibits the enactment of *ex post facto* laws. U.S. Const. art. 1, §§ 9, cl. 3 and 10. The prohibition applies only to criminal, and not civil cases. *See, e.g., DeMartino v. Comm. of Internal Revenue,* 862 F.2d 400, 409, (2d Cir., 1988); *United States v. DKG Appaloosas, Inc.,* 829 F.2d 532, 540 (5th Cir.1987), *cert. denied sub nom. One 1984 Lincoln Mark VII Two Door v. United States,* —— U.S. ——, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). It is true, however, that "the *ex post facto* effect of a law cannot be evaded by simply giving civil form to that which is essentially criminal." *DKG Appaloosas, Inc.,* 829 F.2d at 540. *See also Handel v. Artukovic,* 601 F.Supp. 1421, 1436 (C.D.Cal.1985).

■ The present case does not fall into that category of cases where essentially criminal laws violate the *ex post facto* clause, despite their denomination as "civil" actions. The "sanction" imposed by the Department here is clearly not intended as punishment, *cf. Helvering v. Mitchell,* 303 U.S. 391, 398, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938) (determination of criminality for double jeopardy purposes), nor does it in any way constitute a quasi-criminal proceeding or civil supplement to a criminal action. Termination of the contractual relationship with a Medicaid provider who is deemed a potential threat to public safety is a valid regulatory function of the Department. The fact that a criminal indictment serves as the basis of the Department's determination does not render the regulatory action "criminal" for *ex post facto* purposes.

---

[1]. Current 18 NYCRR 515.7(b) existed formerly in identical form as 18 NYCRR 515.3(e). The recent re-numbering of that section affected no substantive change, and is not material to the present motion.

Plaintiff's challenge to the Department's civil regulatory action based on the *ex post facto* clause is without merit. *U.S. v. DKG Appaloosas, Inc.*, 829 F.2d at 540; *Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). As such, plaintiff here does not come close to demonstrating the likelihood of success on the merits necessary to entitle it to preliminary injunctive relief. *Medical Society v. Toia*, 560 F.2d 535, 538 (2d Cir.1977).

**B. Procedural Due Process.**

■ Plaza asserts that its suspension from participation in the Medicaid program violated due process, in that the notice and hearing opportunities afforded by the Department were constitutionally inadequate.

The threshold issue is whether Plaza has a property interest in continued participation in the Medicaid program.[2] The law in this area is not clear. This Court recognizes, however, those cases which hold that the contractual nature of the relationship between a Medicaid provider and the State, and the provider's lack of employee status, indicate that the provider's interest does *not* rise to the level of a constitutionally protected property interest. *See, e.g., Oberlander v. Perales*, 740 F.2d 116, 120 (2d Cir.1984) ("Medicaid providers clearly have no property interest in future reimbursements under New York law.") (citing *Hurlbut v. Whalen*, 58 A.D.2d 311, 317, 396 N.Y.S.2d 518, 523 (4th Dept.1977) and *Sigety v. Ingraham*, 29 N.Y.2d 110, 115–16, 324 N.Y.S.2d 10, 13–14, 272 N.E.2d 524, 526–27 (1971)); *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988). *But see Patchogue Nursing Center v. Bowen*, 797 F.2d 1137, 1145 (2d Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987); *Okoli v. N.Y.S. Department of Social Services*, 522 N.Y.S.2d 701 (1988, N.Y.Sup.Ct.Albany Cty.).

This finding would be dispositive of the due process issues. Even if this Court were to assume that constitutional interests were implicated here, however, it is not convinced that the procedures afforded were insufficient. The two essential requisites of due process are "notice and an opportunity to be heard." *Oberlander*, 740 F.2d at 120; *Mullany v. Central Hanover Bank and Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). The November 23, 1988 letter to Plaza included notice of: the unacceptable practice that Plaza was determined to have committed; the facts upon which the determination was made; the action that the Department was taking; the effective date of the action; and the right to appeal the determination.

The inquiry into what process is due must be made in light of the interests involved, the risk of erroneous deprivation of that interest, and the governmental interest in the performance of its statutory duties. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Additionally, a due process hearing, to be meaningful, must involve a factual dispute between the parties which has a significant bearing on the action to be taken. *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). Consideration of these factors, in light of the present governmental regulatory concern and the opportunities for administrative appeal, do not indicate a likelihood of a due process violation.

**C. Invalidity of the Regulation.**

■ Plaza finally argues that 18 NYCRR 515.7(b), by virtue of its reference to criminal indictment, is itself unconstitutional. Plaza cites employment cases where employers have been foreclosed from discriminating on the basis of prior arrests that did not result in conviction. *E.g., Gregory v. Litton Systems, Inc.*, 316 F.Supp. 401 (C.D.Cal.1970). These cases are inapposite to the present situation. It is not likely that Plaza will successfully challenge the constitutionality of the regulation on this ground. *See, Federal Deposit Ins. Corp. v. Mallen*, —— U.S. ——, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (uphold-

---

**2.** Such interests are created, not by the Constitution, but by an independent source such as state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972).

ing statutory scheme allowing FDIC to suspend indicted officials).

Plaza's argument that the indicted conduct does not "relate to the furnishing ... for medical care, services or supplies" under 18 NYCRR 515.7(b) is likewise without merit. Dumping of medical wastes surely constitutes a sufficient nexus to the furnishing of medical services to implicate the regulatory interest of the Department.

*Irreparable Harm.*

Based on the foregoing, Plaza cannot establish the second prong of the preliminary injunction test, and the preliminary relief it requests will be denied. *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977). The issue of irreparable harm is therefore not determinative, as it often is in preliminary injunction applications. *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983).

The Court notes again, however, that the continued existence of Plaza will be in doubt. Destruction of an ongoing business can constitute irreparable harm. *See, e.g., Roso–Lino Beverages Distributors Inc. v. Coca–Coca Bottling Co. of New York, Inc.*, 749 F.2d 124, 125–26 (2d Cir.1984); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970). The situation here is particularly unfortunate, in that it involves the probable demise of a minority-owned business that served low income areas, and had maintained an uncontested record of competency in the services it provided. The serious collateral health threat at issue cannot be overlooked or understated, however, and the Department's execution of its statutory and regulatory duties must be evaluated in the context of the controlling legal standards.

Plaintiff's motion for preliminary injunctive relief is hereby denied in its entirety.

SO ORDERED.