OPINION OF THE COURT
Jasen, J.
The sole issue presented in this case is whether the penalty imposed by the Department of Social Services against the petitioners is so disproportionate to the offense as to mandate modification.
Petitioner Jarrett Drug Corporation is a registered pharmacy licensed to do business in the State of New York. Petitioner Gerald Schaubman, a pharmacist, is a principal of Jarrett Drug Corporation and is the corporation’s treasurer. On October 15, 1966, petitioner Schaubman, acting in his capacity as treasurer, applied on behalf of Jarrett Drug Corporation to participate in the Medical Assistance Program (Medicaid) as a provider of services. Thereafter, from 1966 to 1977, petitioners regularly provided services to beneficiaries of the program and received Medicaid funds in payment therefor.
In 1976, however, petitioner Schaubman, while filling a *378 prescription for a Medicaid patient, substituted the generic equivalent for a brand name drug and submitted a false invoice requesting Medicaid reimbursement for the full price of the brand name drug, thereby obtaining $3.39 to which he was not entitled.[1] For this unlawful act, petitioners were criminally charged with two counts of offering a false instrument for filing, one count of attempted petit larceny, one count of omitting to label drugs, or labeling them wrongly, and one count of petit larceny. On August 15, 1977, petitioner Jarrett Drug Corporation pleaded guilty in the Criminal Court of the City of New York to one count of offering a false instrument for filing in the second degree (Penal Law, § 175.30) and was sentenced to pay a fine.
When this fraudulent activity came to the attention of the Department of Social Services, the agency determined that petitioners had committed an "unacceptable practice” within the meaning of subdivision (a) of section 515.1 of the Regulations of the Department of Social Services (18 NYCRR 515.1 [a])[2] and promptly disqualified petitioners from further participation in the program. This determination was subsequently affirmed, after a hearing, by the appellant Commissioner of Social Services.
On July 31, 1978, petitioners commenced the instant CPLR article 78 proceeding to annul the determination of the Commissioner of Social Services. Upon transfer of the proceeding, a unanimous Appellate Division affirmed the finding that an "unacceptable practice” had been committed, but modified, on the law, the determination of the commissioner by reducing the penalty of permanent disqualification from participation in the Medicaid program imposed upon both petitioners to temporary disqualification for a period of one year. As so modified, the determination was affirmed. From this judgment the commissioner appeals. There should be a reversal.
*379 Since the sole question presented on this appeal is whether the penalty imposed by the Department of Social Services is excessive, our review of the administrative penalty imposed is limited to a consideration of whether such penalty is " 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness.’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 233; see, e.g., Matter of 17 Cameron St. Rest. Corp. v New York State Liq. Auth., 48 NY2d 509; Matter of Purdy v Kreisberg, 47 NY2d 354, 360.) In this case, we do not believe that the penalty imposed was so disproportionate to the offense committed as to mandate modification.
It is argued that the penalty of permanent disqualification from the Medicaid program is disproportionate to the instant offense because the financial harm to petitioners which will result from the penalty far exceeds the amount of money fraudulently obtained. We find this argument unpersuasive. In Pell (34 NY2d, at p 235, supra), we noted that a wrongdoer who commits an offense involving moral turpitude cannot he insulated from a severe sanction merely because "small sums of money may be involved.” Indeed, in determining whether a given penalty is disproportionate in light of all the circumstances of the case, we stressed that the court must consider not only the harm actually caused by the incident in issue, but also the substantial public harm which might be caused by repeated violations and the deterrent effect which a substantial penalty might have on the individual violator and upon others who might be tempted to engage in similar misdeeds. (Matter of Pell v Board of Educ., 34 NY2d, at pp 234-235, supra.) Thus, this court cannot limit its inquiry to the question of whether the penalty assessed is excessive only insofar as it operates as a punishment for a single pharmacist who has committed a single act of fraud upon the Medicaid program. Rather, we must also consider the deterrent effect which such a penalty may have upon other providers of services to the medically indigent as well as the risk of harm to the Medicaid program and to the public.
It is beyond dispute that the people of this State have a strong interest in providing medical services to the needy. However, the public must be assured that the funds which have been set aside for this worthy purpose will not be fraudulently diverted into the hands of an untrustworthy provider of services. The Department of Social Services, as the *380 agency charged with the responsibility of administering the Medicaid program, must be allowed broad discretion in fashioning administrative sanctions which can adequately protect this important public interest. (Cf. Kostika v Cuomo, 41 NY2d 673, 677; Matter of Butterly & Green v Lomenzo, 36 NY2d 250, 256.)
Where, as here, a provider of services has demonstrated through his conduct a willingness to defraud the people of the State of New York and the beneficiaries of the Medicaid system, the Department of Social Services should not be required to run the risk that he will do so again. A contrary holding would allow a provider of services to misappropriate public funds with impunity, confident that his misconduct will not deprive him of the benefits of participation in the program so long as small sums of money are involved. This result cannot be tolerated.
Moreover, we would note that the administrative penalty assessed in this case does not prevent petitioner Schaubman from continuing to practice as a pharmacist or petitioner Jarrett Drug Corporation from operating a pharmacy; it merely terminates the contractual relationship with the Department of Social Services which had allowed the petitioners to participate in the Medicaid program. As the courts of this State have previously noted, a provider of Medicaid services has no vested right to continued participation in the program; rather, such participation is a privilege which may, in proper circumstances, be revoked. (See Schwartzberg v Whalen, 66 AD2d 881.)
In our view, the revocation of this privilege in the instant case was an entirely proper administrative response undertaken to protect the public interest in the integrity of the Medicaid system and cannot be said, as a matter of law, to mandate modification.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the determination of the Commissioner of Social Services reinstated.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Judgment reversed, etc.

. The invoice submitted to Medicaid requested $9.09, the full price of the brand name drug. The generic equivalent actually supplied was valued at $5.70. Therefore, $3.39 was unlawfully obtained.

. This regulation (18 NYCRR 515.1 [a]) provides: "Section 515.1 Definitions, (a) Unacceptable practice. An unacceptable practice is conduct which fails to meet standards of good professional medical care and treatment, hampers effective administration of the medical assistance program, disregards established policies, standards, fees and procedures, increases costs to the program without providing equivalent increases in benefits to the program or client, is inconsistent with program standards or regulations, exhibits an unwillingness to meet such standards or regulations, is a potential threat to public health or safety, constitutes fraud or otherwise compromises the purposes of the medical assistance program.”