**PLAZA HEALTH LABORATORIES, INC., Plaintiff–Appellant,**

v.

**Cesar A. PERALES, Commissioner of the New York State Department of Social Services, New York State Department of Social Services, Defendants–Appellees.**

No. 1102, Docket 89–7146.

United States Court of Appeals, Second Circuit.

Argued May 12, 1989.

Decided June 21, 1989.

---

Richard S. Bernstein (Samuel A. Bernstein, Roberta C. Pike, New York City, on the brief), for plaintiff-appellant.

Lawrence S. Kahn (Robert Abrams, Atty. Gen. of the State of N.Y., Robert A. Forte, Asst. Atty. Gen., New York City, on the brief), for defendants-appellees.

Before KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Plaza Health Laboratories, Inc. ("Plaza"), a suspended provider of health-care services in the New York State Medical Assistance Program ("Medicaid"), appeals from an order of the United States District Court for the Southern District of New York, Peter K. Leisure, *Judge*, denying its motion for a preliminary injunction requiring defendants Cesar A. Perales and the New York State Department of Social Services (collectively "DSS") to refrain from suspending or terminating Plaza's participation as a Medicaid provider, following a New Jersey indictment of Plaza and one of its owners for dumping hazardous medical wastes into the Hudson River. Plaza, suing under 42 U.S.C. § 1983 (1982), contended that the suspension violated its rights to due process and to be free of *ex post facto* application of certain laws. The district court denied the motion on the ground that Plaza had not shown a likelihood of success on the merits of its claims. On appeal, Plaza contends principally that the district court did not apply the proper standard for decision of preliminary injunction motions and did not appropriately assess the likelihood of Plaza's success on the merits of its claims. For the reasons below, we find no abuse of discretion in the denial of the injunction.

## I. BACKGROUND

The underlying facts, undisputed for present purposes, may be summarized as follows.

Plaza operates a clinical medical laboratory in Brooklyn, New York. DSS is the New York State ("State") agency charged with the administration of the Medicaid program in the State. In January 1988, Plaza became a DSS-approved Medicaid provider of laboratory services, authorized to perform services for eligible Medicaid patients and to bill the State for its fees. The competence of Plaza's laboratory performance has not been challenged.

On November 18, 1988, Plaza and one of its 50% owners, who was an employee of Plaza, were indicted in New Jersey on charges of, *inter alia*, knowingly causing the release of hazardous substances from the Plaza laboratory, including medical waste posing a threat to human health, into the Hudson River. The unlawful releases

were alleged to have taken place between June 18 and September 26, 1988.

By letter dated November 23, 1988, DSS notified Plaza that, effective five days thereafter, Plaza was to be suspended from participation in the Medicaid program. The notice, entitled "NOTICE OF IMMEDIATE AGENCY ACTION," stated, in pertinent part, as follows:

> THE NEW YORK STATE DEPART-MENT OF SOCIAL SERVICES HAS DETERMINED TO SUSPEND YOU FROM PARTICIPATION IN THE MEDICAL ASSISTANCE (MEDICAID) PROGRAM.
>
> 1. You have violated the provisions of the Department's regulations authorizing immediate action (18 NYCRR 515.7(b)), effective June 6, 1988.
>
> 2. We made this determination based upon the fact that you were charged with a crime relating to the furnishing or billing for medical care, services or supplies.

Section 515.7(b), referred to in the notice, provided, in pertinent part, as follows:

> (b) Upon receiving notice of an indictment which charges a person with committing an act which would be a felony under the laws of New York and which relates to or results from: (1) furnishing or billing for medical care, services or supplies ... the department may immediately suspend the person and any affiliates, and may continue the suspension for 90 days following receipt of notice of the disposition of the indictment.

N.Y. Comp. Codes R. & Regs. tit. 18, § 515.7(b) (1988). The DSS notice to Plaza stated that within 30 days of receipt of the notice Plaza could submit to DSS written arguments or documentation challenging the suspension on the basis of (a) mistake of fact, (b) lack of relationship between the indictment and the provision of medical care, services, or supplies, or (c) inappropriateness of suspension as a sanction. It also stated that Plaza could, upon a favorable disposition of the indictment, request reinstatement as a Medicaid provider.

Pursuing its administrative remedy, Plaza sent DSS a letter on December 22, 1988, challenging the suspension on several grounds and attempting to persuade DSS to rescind the suspension. Referring to the New York Environmental Conservation Law ("ECL"), Plaza argued that the suspension was not authorized by § 515.7(b) because the ECL provisions that were "similar" to the pertinent New Jersey provisions had not made Plaza's acts a felony in New York until November 1, 1988, *i.e.*, after Plaza's dumpings allegedly occurred. Plaza also disputed DSS's contention that the New Jersey indictment related to the furnishing of medical services.

In the meantime, on December 16, 1988, Plaza commenced the present action for monetary and injunctive relief. The complaint alleges principally (a) that DSS gave Plaza no meaningful notice or opportunity to be heard and thus violated Plaza's due process rights, and (b) that suspension on the ground that Plaza had been charged with a felony violated Plaza's rights under the *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, since the ECL section on which Plaza assumed its suspension was predicated, ECL § 71–2704(2)(c) (McKinney Supp.1989) (making it a felony to "knowingly and/or recklessly engage[ ] in conduct which causes the release to the environment of infectious waste" where such release creates "substantial risk of physical injury"), did not make such conduct a felony in New York at the time the unlawful dumpings allegedly occurred.

Plaza promptly moved for a preliminary injunction prohibiting DSS from suspending or terminating Plaza's participation as a Medicaid provider, arguing that its due process and *ex post facto* rights had been violated as alleged in the complaint. In support of its contention that in the absence of such an injunction it would suffer irreparable harm, Plaza stated that 25% of its business had been Medicaid business; that it had employed some 20 persons prior to the suspension and had been forced to lay off 10 of them in the wake of the suspension; and that Plaza could not remain in business without Medicaid payments as a source of income.

In an Opinion and Order dated January 3, 1989, published at 702 F.Supp. 86, the district court denied Plaza's motion for a preliminary injunction, concluding that, although Plaza's continuation in business was in doubt, Plaza had not demonstrated a likelihood of success on the merits of any of its claims. The court concluded that Plaza's *ex post facto* claim was without merit, evaluating that claim as follows:

The present case does not fall into that category of cases where essentially criminal laws violate the *ex post facto* clause, despite their denomination as "civil" actions. The "sanction" imposed by the Department here is clearly not intended as punishment, ... nor does it in any way constitute a quasi-criminal proceeding ....

*Id.* at 89. The court found no likelihood of success with respect to the due process claim because it concluded that a healthcare provider's "interest does *not* rise to the level of a constitutionally protected property interest," *id.* at 90 (emphasis in original), and that, in any event, the procedures afforded were not inadequate.

On January 25, 1989, Plaza appealed. On February 22, DSS issued its decision denying Plaza's administrative appeal of the suspension. With regard to Plaza's *ex post facto* argument, DSS stated that Plaza's alleged conduct would be a felony under ECL § 71–2713 (McKinney Supp.1989), which prohibits, *inter alia*, the knowing or reckless release to the environment of hazardous wastes that enter a primary water supply. That section's prohibition, creating a felony, had been in effect since November 1, 1986.

## II. DISCUSSION

On appeal, Plaza argues principally that the district court erred in applying only a likelihood-of-success test in ruling on the preliminary injunction motion and that, even under that test, the injunction should have been granted. We conclude that the court did not apply an improper standard and that its denial of the injunction was not an abuse of discretion.

### A. The Standard for Deciding a Motion for Preliminary Injunction

In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *See, e.g., Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). We have held, however, that where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *See, e.g., Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981); *Medical Society of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977). In the latter case, brought by physicians, patients, and a medical society challenging certain Medicaid regulations, we reversed the order of the district court which had granted a preliminary injunction against enforcement of the regulations using the fair-ground-for-litigation branch of the test. We stated that "where the grant of interim relief may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond," the moving party must satisfy the more stringent part of the test by "establish[ing] a probability of success on the merits." *Id.*

In the present case, it is plain that DSS acts in pursuit of the public interest and in accordance with the regulatory scheme by suspending a provider from Medicaid participation when there is probable cause to believe that the provider has dumped hazardous medical wastes from its laboratories

into public waters. We conclude that the district court properly rejected Plaza's request that it use the less rigorous fairground-for-litigation test.

### B. *Our Review of the Denial of Plaza's Motion*

The ultimate question on appellate review of a district court's denial of a preliminary injunction is whether or not the court abused its discretion. *See, e.g., Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 315 (2d Cir.1982); *Gillespie & Co. v. Weyerhaeuser Co.,* 533 F.2d 51, 53 (2d Cir.1976) (per curiam); *see also Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975) (same standard of review where preliminary injunction granted). In light of the record before us, we see no abuse of discretion in the court's refusal to preliminarily enjoin DSS's suspension of Plaza.

### 1. *The Due Process Claim*

■ Plaza contends that its due process rights were violated because DSS did not give it adequate notice or a presuspension hearing. We conclude that the district court properly ruled that Plaza had not shown a likelihood of success on this claim because (1) it may well be that a person's interest in uninterrupted continuation as a Medicaid provider is not a property right that is protected by due process, and (2) even if it is such a right, any deficiency in the notice to Plaza did not warrant preliminary injunctive relief, and Plaza received an adequate opportunity to be heard.

The Due Process Clause extends its procedural guarantees only to deprivation of a protected interest in life, liberty, or property. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In general, to have a property interest in a government benefit, "a person clearly must have more than an abstract need ... for it.... He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709; *see S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 965–66 (2d Cir.1988). Such an entitlement is not created by the

Constitution itself but rather " 'by existing rules or understandings that stem from an independent source such as state law ....' " *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709); *see Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985), *modified,* 793 F.2d 457 (2d Cir. 1986). In considering state law, we focus initially on the relevant statute, regulation, or contract establishing eligibility for the government benefit at issue. *See, e.g., Board of Regents of State Colleges v. Roth,* 408 U.S. at 577–78, 92 S.Ct. at 2709–10; *Goldberg v. Kelly,* 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970).

Where the state provisions bestow a right that cannot properly be eliminated except for cause, that right constitutes property protected by procedural due process. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 600–01, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Arnett v. Kennedy,* 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part); *RR Village Ass'n v. Denver Sewer Corp.,* 826 F.2d 1197, 1201 (2d Cir.1987). On the other hand, the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them. *See id.* at 1201–02; *see also Bishop v. Wood,* 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976) (insofar as city ordinance meant that policemen were employed at the will and pleasure of the city, they had no property interest).

In the Medicaid context, we have not had occasion to rule dispositively on the question of whether the provider of services had a property right, under the then-applicable state regulatory scheme, to continue to participate in the program. In *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir. 1984), we held that Medicaid providers had no property interest in the future rate of

reimbursements, but there was no question of the plaintiffs' continued status as providers. In *Patchogue Nursing Center v. Bowen*, 797 F.2d 1137, 1144–45 (2d Cir. 1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987), we stated that a nursing home facility ousted from Medicaid participation did have a property right protected by due process; but since we went on to conclude that the facility had received due process, our statement as to the existence of a property right was in the nature of dictum. *See also Case v. Weinberger*, 523 F.2d 602, 606, 609–10 (2d Cir.1975) (same). Nor have we received clear guidance from the state courts. Though the New York Court of Appeals has stated that a provider of Medicaid services "has no vested right to continued participation," *Schaubman v. Blum*, 49 N.Y.2d 375, 380, 426 N.Y.S.2d 230, 233, 402 N.E.2d 1133, 1135 (1980), it also stated that such participation may be revoked only "in proper circumstances," *id.*, which may indicate that in 1980 some protectable property interest existed. *See generally S & D Maintenance Co. v. Goldin*, 844 F.2d at 967–68.

The present structure of the State's Medicaid laws suggests that a provider does not have a property interest in continued participation in the program. Thus, § 504.7(a), which became effective January 5, 1987, provides that "[a] provider's participation in the program may be terminated by either the provider or the department upon 30 days' written notice to the other *without cause*." N.Y.Comp.Codes R. & Regs. tit. 18, § 504.7(a) (1988) (emphasis added). Though § 504.7(b) states that "[a] provider's participation in the program may be terminated [or] suspended ... if the department finds that the provider has engaged in an unacceptable practice as set forth in Part 515," *id.* § 504.7(b), and that a provider thus sanctioned is entitled to notice and an opportunity to be heard "in accordance with Part 515," *id.*, that provision arguably may not result in a property right even where the State proceeds under Part 515 and asserts that there is cause for a sanction, since § 515.7, which is in Part 515, provides that notwithstanding any other provision in the State Social Services regulations, DSS may take "immediate action" to suspend or terminate a provider under stated circumstances. *Id.* § 515.7. Thus, the combination of rights reserved by the State with regard to Medicaid providers, allowing DSS to terminate without cause on 30 days' notice or to terminate or suspend immediately in certain circumstances, casts doubt on whether the provider's interest in continuing as a provider, either indefinitely or for any period without interruption, is a property right that is protected by due process.

We need not decide here, however, whether or not the provider's interest is such a right. It is significant, in connection with our review of the district court's decision to deny a preliminary injunction, that there is serious doubt as to the existence of a right.

Further, even if the provider has a property right in continued status as a Medicaid provider, we would be hard pressed to find here that the notice and opportunity to be heard given by DSS, if inadequate, were so inadequate in the circumstances of this case as to require reversal of the denial of a preliminary injunction. The notice stated that Plaza had been charged with a crime, and it cited § 515.7(b)'s "regulations authorizing immediate action." While the notice did not mention the New Jersey indictment *in haec verba*, Plaza does not claim to have been unaware that it had been indicted or that this was the criminal charge alluded to in the DSS notice. Further, though the notice did not specify what provision of New York law DSS had in mind, it would require little thought, in light of the indictment, to focus on the ECL, and indeed, Plaza inferred that ECL provisions were at issue.

The notice problem lies in DSS's failure to specify what ECL section or sections it believed applied. Arguably, since DSS has now pointed to a section other than the one focused on by Plaza, the lack of specificity may have constituted inadequate notice, and we do not intend to foreclose such a finding at trial (assuming the court determines that Plaza had a cognizable property interest). Nonetheless, for at least two

reasons, the equities hardly required the district court to enjoin DSS from suspending Plaza. First, though ECL § 71–2704(2), which Plaza assumed was what DSS had in mind, did not describe a felony prior to November 1, 1988, Plaza could not have believed its alleged acts would have been lawful in New York prior to that date, since under the predecessor to that section, those acts would have been misdemeanors in New York. *See* ECL § 71–2703(2) (McKinney Supp.1988). DSS may be entitled to rely on § 71–2704(2) notwithstanding that it made the alleged conduct felonious only on or after November 1, 1988, since § 515.7(b) refers to acts that "would *be* a felony" (emphasis added), not merely to acts that would *have been* a felony when performed. Second, since the DSS notice, in light of the indictment of which Plaza was aware, plainly caused Plaza to focus on the ECL, Plaza arguably had no reason to ignore the potential applicability of the felony provisions of ECL § 71–2713, since that section, which was in effect at the time of the alleged dumpings, refers to the release of wastes into surface waters and the indictment alleged dumping into the Hudson River.

In all the circumstances, even assuming a property right exists, we conclude that if the DSS notice was inadequate, it was not so inadequate as to require the district court to grant preliminary injunctive relief.

■ Finally, we see no merit in Plaza's argument that § 515.7 is unconstitutional on its face because it allows a Medicaid provider to be suspended on the basis of an indictment without any hearing. Plaza was in fact afforded the right to submit written arguments within 30 days, challenging the suspension on a number of grounds. The Supreme Court has upheld similar regulatory schemes that provide for immediate suspensions with an opportunity to be heard later. *See, e.g., Federal Deposit Insurance Corp. v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 1787–92, 100 L.Ed.2d 265 (1988) (suspension of indicted bank officer without prior hearing did not violate due process where there was a postsuspension opportunity to present argument);

*Barry v. Barchi,* 443 U.S. 55, 63–66, 99 S.Ct. 2642, 2648–50, 61 L.Ed.2d 365 (1979) (suspension, without prior hearing, of trainer of race horses after horse tested positive for drugs did not violate due process so long as reasonably prompt postsuspension hearing was provided). The State's interest in promptly ceasing to deal with Medicaid providers indicted for dumping harmful medical wastes into public waters is surely no less than its interest in the integrity of horse racing.

### 2. *The* Ex Post Facto *Claim*

■ Finally, we reject the contention that Plaza was entitled to a preliminary injunction against suspension on the ground that application of ECL § 71–2704(2) to its alleged dumping would violate its rights under the *Ex Post Facto* Clause. The State did not seek to prosecute Plaza for its alleged dumpings. Thus, the test is whether the suspension was so punitive as to be a criminal sanction in either purpose or effect. *See DeMartino v. Commissioner,* 862 F.2d 400, 409 (2d Cir.1988). Plaza is unlikely to meet this test. The state-law provisions appear to constitute merely a valid regulatory scheme. For example, Plaza was given the right to contest the suspension immediately on the basis of, *inter alia,* the lack of a relationship between the New Jersey indictment and the provision of medical care, services, or supplies. Thus, even assuming that DSS had proceeded under § 71–2704(2), we agree with the district court's view that Plaza failed to establish a likelihood of success on its *ex post facto* claim.

### CONCLUSION

We have considered all of Plaza's arguments on this appeal and have found them to be without merit. We are constrained to note, however, that had we found merit in some of Plaza's arguments we would not automatically have reversed the district court's decision, given the leisurely pace at which Plaza has proceeded since the entry of that decision. As an appellant seeking reversal of the denial of a preliminary in-

junction, which was sought to avoid immediate irreparable harm, Plaza would have been well advised to seek expeditious treatment of the proceedings both at the appellate level and the district court level. It has not done so. It apparently took no steps in the five-day period between the DSS notice and the effective date of the suspension to forestall that suspension. Some three weeks elapsed before this suit was brought. Though Plaza moved for the preliminary injunction promptly after commencing suit, it waited until some three weeks after the denial of that motion to appeal to this Court, and it did not seek expedited treatment of the appeal. Hence, though the district court's decision was filed in early January, and though "[t]his court stands ready, if the circumstances justify it, to give the fastest consideration consonant with sound judgment to cases in which ... any party ... seeks review of the grant or denial of preliminary relief," *Danielson v. International Brotherhood of Electrical Workers,* 509 F.2d 1371, 1375 (2d Cir.1975), the appeal was not heard until more than four months later. Further, we were advised at oral argument of the appeal that Plaza had made no attempt to have an early trial of its claims in the district court. The granting of a preliminary injunction is extraordinary relief; a reversal of the denial of such relief is even more extraordinary. Plaza's rather casual pursuit of its claims after the district court's denial of a preliminary injunction suggests that the extraordinary relief it seeks in this Court is not warranted.

The order of the district court denying the motion for a preliminary injunction is affirmed.

No costs.