KELLY KARE, LTD.; Joan C. Kelly; Kevin McNulla, on behalf of himself and all others similarily situated; and Charlotte Cohen, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Andrew P. O'ROURKE, Westchester County Executive; Westchester County; Westchester County Department of Social Services; John J. Allen or his successor, Commissioner of the Westchester County Department of Social Services ("WCDSS"); S. Reitano, First Deputy Commissioner WCDSS; Phyllis Shearer, Deputy Commissioner WCDSS; Joseph J. Campanella, Program Coordinator of WCDSS; Joseph Loscri, Accountant WCDSS; Patricia Quirk, Supervising Examiner WCDSS; Adrienne Young, Program Coordinator of WCDSS; Ms. Califano, WCDSS Supervisor; Cindy Capone, WCDSS Personal Care Worker; and Donald Williams, WCDSS caseworker, Defendants.

No. 90 Civ. 7418 (GLG).

United States District Court, S.D. New York.

Dec. 7, 1990.

Vedder, Price, Kaufman, Kammholz & Day, New York City (James Frank, Neal A. Capobianco, of counsel), for plaintiffs.

Marilyn J. Slaatten, County Atty., Westchester County, White Plains, N.Y. (Brian J. Powers, Deputy County Atty., of counsel), for defendants.

## OPINION

GOETTEL, District Judge.

The plaintiff, Kelly Kare, Ltd., is a qualified Medicaid provider affording personal care services to indigent, disabled persons. Joan C. Kelly is its president and principal owner. The personal care services provided to Medicaid recipients include homemaker and housekeeping services. A worker generally serves only a single recipient and, indeed, many recipients have two or more persons assigned to their care in order to provide all-day and weekend service. The other named plaintiffs in this action, who seek to be class representatives, are a recipient and an employee of Kelly Kare, Ltd.

The program, under which Kelly Kare provides personal care services to eligible recipients, is authorized by Title XIX and XX of the Social Security Act. *See* 42 U.S.C. § 1396 *et seq.* It is funded primarily by the federal government but also by state and county contributions. The New York State Department of Social Services regulates the program and makes payments to the personal care providers. Local counties administer the personal care services by, *inter alia*, contracting with licensed providers.

The Westchester County Department of Social Services contracted with Kelly Kare, among a number of others, to provide the personal care services to Medicaid-eligible residents in Westchester County. The contracts are on a calendar year basis and Kelly Kare has so contracted with Westchester since 1987. The state assigns a Medicaid management information system number to Kelly Kare and makes payments upon receiving appropriate invoices. The Kelly Kare contract with the County of Westchester is the only Medicaid contract which Kelly Kare has. It does have a number of individual clients who are not on welfare.

The contract between the County of Westchester and Kelly Kare provides that it may be terminated without cause upon thirty days notice. This conforms with the New York State regulations which allow such terminations. *See* 1e N.Y.Comp. Codes R. & Regs. tit. 18, 504.7(a). On or about October 26, 1990, the County notified Kelly Kare that its contract was being terminated, without cause, at the end of November. The contract, by its terms, does not expire until the end of December.[1] The County has refused to state its reasons for terminating Kelly Kare's contract, taking the position that since it can do so without cause, it need not have a reason and, in any event, need not disclose it.[2] Immediately after notifying Kelly Kare, the County started advising Medicaid recipients serviced by Kelly Kare, as well as its employees, of the impending contract termination and the fact that governmental funds would not be thereafter subsidizing the program. The County contends that most of the patients have agreed to change agencies while Kelly Kare contends that most of the recipients have remained with them.[3] We do not deem this issue material since it is enough to say that some recipients have switched and some have not.

Plaintiffs then commenced the instant lawsuit challenging the impending termination of the contract, alleging that it violates various federal and constitutional

---

1. Kelly Kare argues that it has already contracted with the County for the year 1991 since it, along with other providers, agreed to proposed rates for that year in writing, which was then submitted by the County to the State for approval. That step, which is preliminary to the entering into of a contract, clearly gives Kelly Kare no contractual rights for the year 1991.

2. On oral argument, we were advised that there is a criminal investigation into Kelly Kare or a related company owned by the same principal. Since we have no affidavit to this effect and are given no details, we do not give this development any consideration.

3. In exchange for a limited restraining order, Kelly Kare has agreed to provide services to its remaining clients at least through the month of December and will not bill these clients for lost Medicaid benefits.

rights of the plaintiffs. Simultaneously, they moved for preliminary injunctive relief. Two hearings were conducted.[4] While Kelly Kare asserts a number of claims,[5] only three of these have sufficient materiality to require consideration.

The general standard for granting preliminary injunctive relief in this circuit is well settled. To justify the issuance of an injunction, the plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). However, where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-grounds-for-litigation standards do not apply. *Union Carbide Agricultural Production Co. v. Costle*, 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981). Therefore, to prevail on this motion, Kelly Kare must show both that irreparable harm to it will result if the County's termination is not enjoined and that it is likely to prevail on the merits of the claims asserted.

For the purpose of this discussion, we will assume that Kelly Kare will suffer irreparable harm as a result of the County action. However, this assumption should be tempered by our observation that the termination of the Westchester County contract has no effect upon Kelly Kare's status as a state authorized Medicaid provider. It can obtain contracts from any other County or governmental body which is willing to contract with it.

Next, Kelly Kare's likelihood of success on the merits must be assessed. The initial claim is that Kelly Kare has a property interest in the continuation of its contract. Therefore, as guaranteed by the fourteenth amendment, due process requires that a hearing be held before the contract is actually terminated.[6] We cannot recognize this claim. As noted above, the contract in question states that it is terminable without cause. Furthermore, as the County argues, if all public contracts were *per se* a property interest, the effect would be the constitutionalization of the contractual relationships of all governmental contractors. No court has yet recognized such a claim of entitlement. *See, e.g., S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962 (2d Cir.1988).

In response, Kelly Kare denies that it is attempting to vindicate its contract rights, claiming that the County's refusal to renew its contract deprives it of its status as a Medicaid provider. Even if Kelly Kare were correct, this circuit has not squarely declared that Medicaid providers have a property interest in continuing participation in the program. In *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989), the court held that the health care provider's interest did not rise to a level of a constitutionally protected property interest. Although that same court, three years earlier, declared that health care providers have a constitutionally protected property interest in continued participation in the Medicare and Medicaid programs, *see Patchogue Nursing Center v. Bowen*, 797 F.2d 1137, 1144–45 (2d Cir. 1986), we note that the health care provider in that case was being terminated from the

---

4. These hearings demonstrated that, while there is a substantial factual issue critical to the injunction decision, its resolution can be reached from undisputed evidence. Consequently, no evidentiary hearing has been deemed necessary on the motion for preliminary injunction.

5. One of the more transparent claims is that the contract was terminated because the company is owned by a woman. The company has been owned by a woman for the several years since it

first started contracting with the County. There appear to be about four other providing companies which are female owned. There is nothing in the record to support this sex discrimination claim.

6. The moving papers do not suggest the forum for this hearing, the issues to be determined, or the manner in which the dispute should be resolved.

program by the New York State Department of Health. But here, as mentioned earlier, Kelly Kare's status as a Medicaid provider is not threatened—Westchester County has simply declined to renew its contract. Indeed, because Kelly Kare's status as a state authorized Medicaid provider continues, there has been no denial of a license which would normally support a due process claim for a hearing.[7]

Furthermore, although the recipients (the putative McNulla class) have a right to continued benefits, see *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), they have no property right to demand a specific Medicaid provider, *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). Finally, we can see no possible property rights of Kelly Kare's employees that are not derivative from Kelly Kare's own status or from those of the recipients.

Kelly Kare attempts to bolster its due process claim by arguing that it also has liberty interests that are being "stigmatized" by the termination of its contract without cause. To support such a claim, the plaintiff must show that there is damage to the plaintiff's reputation resulting from the government's release of stigmatizing information that is false. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Senape v. Constantino*, 740 F.Supp. 249, 260 (S.D.N.Y.1990). The County is attempting to avoid fueling such a claim by refusing to give any reason for the termination. The plaintiffs argue that the failure to give a reason also implicates liberty interests since the mere termination of a contract has negative implications. If

this argument was accepted, all contract, employment, or other types of terminations, regardless of circumstances, could support a constitutional due process claim in which the propriety of the termination could always be litigated in federal court.

The only substantial argument made by Kelly Kare, and the one on which it chiefly relies, is the claim that its contract has been terminated because of an anti-union bias on the part of the County. It seems that shortly before the contract termination, Kelly Kare gave a copy of its union contract to the County.[8] Kelly Kare argues that the relatively contemporaneous contract termination must be more than a coincidence and has to be due to an anti-union bias on the part of the County Department of Social Services.

The County disputes this vigorously.[9] It acknowledges that the County may not discriminate against its contractors for unconstitutional or impermissible reasons. *See Rutan v. Republican Party of Illinois*, — U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). However, the County notes that most of its employees are unionized and that some of the other Medicaid providers who contract with the County are unionized.[10] The responsible officials of the County have, by affidavit, denied any union bias or any such matters entering into their consideration of the contract termination. While the plaintiffs are, of course, not bound by such a denial, they have not made an adequate evidentiary showing of an impermissible motive so as

7. *See* footnote 2, *supra*. If the criminal investigation leads to a termination of Kelly Kare's status as a Medicaid provider, the situation will be different. But in that case, the appropriate defendant would be the State of New York.

8. The copy was given to document Kelly Kare's claim that it was providing free health care to its workers as required by the County and State. The contract had been in force for a couple of months.

9. The County also argues that the Court may not even consider the issue since labor union disputes are regulated by the National Labor Relations Act, 29 U.S.C. § 160, and the plaintiffs must exhaust administrative remedies as a prerequisite for judicial review. In light of our determination on the weight of the evidence, we need not consider this interesting legal issue.

10. We are aware that the County and at least one major union have been having severe disputes. However, there is no evidence that Kelly Kare's union, Communication Workers of America, is engaged in any disputes with the County.

to warrant the extraordinary imposition of injunctive relief preventing the contract termination.[11] We have considered the other arguments raised by plaintiffs and find them unconvincing. Plaintiffs have not established the likelihood of success.

Consequently, on the evidence before the court at this time, the motion for a preliminary injunction must be denied. The court's earlier restraining orders are dissolved.

SO ORDERED.

---

**11.** As noted above, the contract, by its terms, expires at the end of this month. The plaintiffs seek not only an injunction against its early termination but the affirmative imposition of a contractual relationship for the future or until such time as the defendants can convince the court (or whatever tribunal the plaintiffs believe should conduct such a hearing) that Kelly Kare is an inadequate provider of services.