**Sidney GELLMAN, M.D., Plaintiff,**

v.

**Louis W. SULLIVAN, individually and in his capacity as Secretary of the United States Department of Health and Human Services, Defendant.**

**No. CV–90–2921(ADS).**

United States District Court, E.D. New York.

Jan. 9, 1991.

Jacobson and Goldberg, Garden City, N.Y. (Robert Purzak, of counsel), for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Stephen J. Riegel, Asst. U.S. Atty., Office of General Counsel, Dept. of Health and Human Services by Annette H. Blum, Regional Counsel—Region II, Robert Wanerman, Joseph M. Gold, Asst. Regional Counsel, for defendant.

## OPINION AND ORDER

SPATT, District Judge.

Plaintiff Sidney Gellman, M.D. ("Dr. Gellman"), moves for a preliminary injunction to restrain the defendant[1] from terminating Dr. Gellman's participation in Medicare and Medicaid programs until such time as he is afforded an administrative hearing and a decision thereon. Dr. Gellman also seeks to preliminarily enjoin the defendant from notifying any state agencies to terminate his participation in the Medicare program, and also from publishing or otherwise informing the public that Dr. Gellman has been excluded from the programs. For the reasons stated below, Dr. Gellman's motion is denied.

## FACTUAL BACKGROUND

Dr. Gellman has been a licensed physician since 1956. He is a board-certified pathologist, and was Director of Pathology at Franklin General Hospital, Valley Stream, New York ("Franklin General"), from 1963 to 1989. Although no longer the Director, he is presently a staff pathologist at Franklin General.

In 1981, while still employed with Franklin General, Dr. Gellman became a Director of Sunrise Medical Laboratories ("Sunrise"), a private clinical laboratory. During his employment at Sunrise, Dr. Gellman performed laboratory work consisting of pathology and cytology evaluations. Although Sunrise allegedly possessed the requisite Department of Health permits to perform various laboratory work, it did not have the required permits for pathology and cytology studies. Similarly, Dr. Gellman had no such permits on his own.

In 1988, Dr. Gellman was charged with the violation of two misdemeanor criminal offenses: (1) violation of N.Y. Public Health Law § 574, for failure to obtain necessary permits; and, (2) violation of 10 N.Y.C.R.R. § 58–1.9, for removing certain specimens from Sunrise to his home for analysis. Dr. Gellman pled guilty to both counts on November 7, 1988. As a result, he was sentenced to a conditional discharge, fined $500 on each conviction, and referred to the New York State Department of Health ("DOH") for a review of

---

[1]. The plaintiff originally named "Otis Bowen", former Secretary of the United States Department of Health and Human Services, as the defendant in this action. However, at oral argument on August 22, 1990, the Court directed that the caption be amended to name Louis W. Sullivan, the present Secretary, rather than Otis Bowen, as the defendant.

the circumstances surrounding the convictions.

After a review of the convictions, the DOH took the following action: (a) imposed a $5,000 fine; and, (b) forced Dr. Gellman to resign the Directorships at both Franklin General and Sunrise. Dr. Gellman was also placed on three years probation by the Office of Professional Medical Conduct.

By letter dated January 5, 1990, the defendant notified Dr. Gellman that as a result of these convictions, he would be excluded from participation in the Medicare program and any similar state health care programs, including Medicaid, pursuant to 42 U.S.C. § 1320a–7(a), the "mandatory" exclusion provision. The letter also afforded Dr. Gellman an opportunity to provide the defendant with any mitigating information that it should consider. Dr. Gellman ultimately submitted such information. On July 20, 1990 the defendant gave Dr. Gellman final notice of the determination to terminate his participation in Medicare and any similar state programs for a period of five years, effective twenty days from the date of the letter. This second notice, however, based the termination under 42 U.S.C. § 1320a–7*(b)*, rather than subsection 7*(a)*, which is the "permissive" exclusion provision.

Dr. Gellman commenced this action on August 20, 1990, pursuant to 42 U.S.C. §§ 405(g) and 1320a–7(f)(1), seeking to restrain and enjoin the defendant from excluding him from participating in the Medicare and related state programs prior to an administrative hearing and disposition. On August 20, 1990, Circuit Judge George C. Pratt, sitting by designation, signed an Order to Show Cause which scheduled the preliminary injunction hearing before this Court on August 22, 1990. Judge Pratt also denied Dr. Gellman's request for a Temporary Restraining Order.

In opposition, the defendant argues first, that the Court lacks subject matter jurisdiction over the action and requests dismissal under Fed.R.Civ.P. 12(h)(3); and second, even assuming jurisdiction exists, Dr. Gellman has failed to establish the traditional elements entitling him to a preliminary injunction.

This Court heard oral argument on the preliminary injunction application on August 22, 1990, at which time the parties stipulated that Dr. Gellman could continue as a Medicare provider and that he would be afforded the opportunity to submit a response to the defendant's final exhaustion notice dated July 20, 1990. This was done to ensure that Dr. Gellman had received the proper notice of the specific statutory provision under which he was being excluded, namely, 42 U.S.C. § 1320a–7(b). Thereafter, by letter dated October 30, 1990, the defendant notified Dr. Gellman that the original determination of suspension would stand. The parties appeared for a conference on November 16, 1990 before this Court, at which time additional briefing was requested on the issue of the Court's subject matter jurisdiction.

Concurrent with this action, Dr. Gellman is also attempting to exhaust his administrative remedies. At this time, the parties have made written submissions to the Secretary and a pre-hearing conference is scheduled for sometime in the near future. No final administrative determination has been made.

## DISCUSSION

At the outset, the Court must first determine whether subject matter jurisdiction exists (*see* Fed.R.Civ.P. 12[h][3]; *Republic of the Philippines v. Marcos*, 806 F.2d 344, 352 [2d Cir.1986], *cert. dismissed sub nom. Ancor Holdings, N.V. v. Republic of the Philippines*, 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784, *cert. denied sub nom. New York Land Co. v. Republic of the Philippines*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 [1987]).

Dr. Gellman bases subject matter jurisdiction of this action on 42 U.S.C. § 405[g] (*see* Complaint ¶ 4). Section 405(g) provides the *only* basis of jurisdiction to review actions of the Secretary (*see* 42 U.S.C. § 405[h]; *see also Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 [1975]). However, judicial review of administrative action under the Social Securi-

ty Act is only available after the plaintiff has finally exhausted all administrative remedies (*see also* 42 U.S.C. § 1320a–7[b][1]).

Section 405(g) of the Social Security Act provides the exclusive method for judicial review of the Secretary's actions, as follows:

"Any individual, *after any final decision of the Secretary made after a hearing* to which he was a party ... may obtain a review of such decision by a civil action ..." (42 U.S.C. § 405[g] [emphasis supplied]).

Accordingly, by its express terms, section 405(g) precludes judicial review until a "final decision" after a "hearing", both of which Dr. Gellman concededly has pursued, but has not exhausted.

■ Dr. Gellman admits that he is only now seeking to exhaust his administrative remedies under the Social Security Act. However, Dr. Gellman alleges that this case fits within the Supreme Court's exception to the "exhaustion" requirement, namely, when a plaintiff raises a "colorable" constitutional challenge entirely collateral to the "entitlement" issue, federal jurisdiction exists despite the plaintiff's failure to exhaust administratively (*see Mathews v. Eldridge*, 424 U.S. 319, 329–32, 96 S.Ct. 893, 900–01, 47 L.Ed.2d 18 [1976]). The focus, therefore, is whether Dr. Gellman raises a colorable constitutional challenge collateral to his claim of entitlement to confer subject matter jurisdiction over the action before he has exhausted his administrative remedies.

■ Since the defendant has provided Dr. Gellman with additional notice of the specific statutory provision under which the Secretary seeks to suspend his Medicare participation, then his original procedural due process claim, namely, that he was not given prior notice of the specific provision upon which his termination was based, no longer exists. The only remaining constitutional challenge Dr. Gellman raises is whether terminating his participation in the Medicare and Medicaid programs under these circumstances without first having a pre-termination hearing violates his due process rights under the Fifth and Fourteenth Amendments.

In *Patchogue Nursing Center v. Bowen*, 797 F.2d 1137 (2d Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987), the Second Circuit noted that there *may* be a "property interest" in a medical provider's continued participation in such programs. However, since *Patchogue Nursing Center*, the Second Circuit raised serious doubt about the validity of that statement three years later in *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 582 (2d Cir.1989). Although the statements in both cases are considered dicta, the court in *Plaza Health, supra*, clearly stated "that a provider does not have a property interest in continued participation in the program" (878 F.2d at p. 582). Thus, although the Second Circuit has not been squarely presented with the issue, the strong suggestion in *Plaza Health* indicates, in this Court's view, that no such property right in fact exists.

This Court also finds it significant that the Second Circuit affirmed, albeit without an opinion, *Medecorp Laboratories, Inc. v. Perales*, 89 Civ. 7320 (JFK), slip op., 1990 WL 55703 (S.D.N.Y. Apr. 24, 1990), which expressly held that there was no such property interest in light of the Second Circuit's suggestion in *Plaza Health*. Furthermore, the district courts in this Circuit in cases decided subsequent to *Plaza Health, supra*, have repeatedly held that a medical provider does not have a protectible "property interest" in the continued participation of Medicaid or Medicare programs (*see, e.g., Senape v. Constantino*, 740 F.Supp. 249, 257 [S.D.N.Y.1990] [Tenney, J.]; *Baker v. Sullivan*, No. 90–CV–647, slip op., 1990 WL 179634 [N.D.N.Y. Nov. 16, 1990] [McCurn, Ch. J.]; *Medecorp Laboratories, Inc. v. Perales*, 89 Civ. 7320, slip op., 1990 WL 55703 [S.D.N.Y. Apr. 24, 1990] [Keenan, J.], *aff'd sub nom. Fort Washington Clinical Laboratory v. Perales*, 909 F.2d 1473 [2d Cir.1990]; *Rockland Medilabs, Inc. v. Perales*, 719 F.Supp. 1191 [S.D.N.Y. 1989] [Goettel, J.]), which is also in accord with New York state decisions on this issue (*see, e.g., Barata v. Perales*, 157 A.D.2d

623, 550 N.Y.S.2d 642 [1st Dep't 1990]; *Bora v. New York State Dep't of Soc. Servs.,* 152 A.D.2d 10, 547 N.Y.S.2d 956 [3d Dep't 1989]; *Bezar v. New York State Dep't of Soc. Servs.,* 151 A.D.2d 44, 546 N.Y.S.2d 195 [3d Dep't 1989]; *Tobon v. New York State Dep't of Soc. Servs.,* 142 Misc.2d 310, 537 N.Y.S.2d 428 [Sup.Ct. Albany County 1989]; *cf. Kare, Ltd. v. O'Rourke,* 751 F.Supp. 1154 [S.D.N.Y.1990] [Goettel, J.] [motion to preliminarily enjoin County of Westchester from terminating without cause contract with plaintiff to provide personal care services to Medicaid patients denied, since no "property interest" in continued participation in such programs]; *Schaubman v. Blum,* 49 N.Y.2d 375, 380, 402 N.E.2d 1133, 1135, 426 N.Y. S.2d 230, 233 [1980] [in action involving permanent disqualification of a registered pharmacist from participation in Medicaid program, court stated that there was "no vested right to continued participation in the program; rather, such participation is a privilege which may, in proper circumstances, be revoked"]; *Schwartzberg v. Whalen,* 66 A.D.2d 881, 881–82, 411 N.Y. S.2d 667, 669 [2d Dep't 1978] [right to continued participation as Medicaid provider does not attach to a nursing home, and therefore state may refuse to renew participation agreement without a hearing]).

In light of the recent clear expression in *Plaza Health, supra,* the Second Circuit's affirmance of *Medecorp, supra,* as well as the other recent federal and state court decisions that have addressed this issue, this Court is of the view that no property interest exists in a medical provider's continued participation in Medicare and similar state programs to afford protection under the Fifth and Fourteenth Amendments.

Accordingly, since Dr. Gellman has failed to exhaust his available administrative remedies and has not raised any colorable constitutional challenges, the Court lacks subject matter jurisdiction over this action at this time and, accordingly, the motion for a preliminary injunction is denied.

## CONCLUSION

Since Dr. Gellman has not yet exhausted his available administrative remedies and

no colorable constitutional claim is presented, the Court lacks subject matter jurisdiction over the action at this time. Accordingly, the motion of the plaintiff for a preliminary injunction is denied and, pursuant to Fed.R.Civ.P. 12(h)(3), the action is dismissed for lack of subject matter jurisdiction.

Pursuant to Fed.R.Civ.P. 52(a), this opinion and order constitutes the Court's findings of fact and conclusions of law.

SO ORDERED.