OPINION OF THE COURT
Jane S. Solomon, J.
In this CPLR article 78 proceeding, petitioners seek to rescind and annul a decision by the respondent Commissioner of the New York State Department of Social Services (DSS) to exclude them from participating as providers in DSS’ Medicaid program. Petitioners assert that respondent’s decision is arbitrary and capricious because it is based on factual error and misinterpretation of DSS regulations. For reasons stated below, petitioners’ application for article 78 relief is denied.
FACTUAL BACKGROUND
Petitioners, Dr. James S. Magidson, Dr. Gerard F. Ryan, *205 and Dr. Che-Wu Hung, are pathologists who practiced at Brookhaven Memorial Hospital on Long Island (Brookhaven) since 1967, 1971 and 1975, respectively. Each was a participating provider in New York State’s "Medical Assistance for Needy Persons” program (Medicaid), virtually from the beginning of his association with Brookhaven. Medicaid is a publicly financed program administered by the State for the benefit of indigent patients. (42 USC § 1396a et seq.; Social Services Law § 363 et seq.)
Petitioners contend that in or about 1985 several physicians at Brookhaven requested that the petitioners recommend a health services laboratory to which they would send their patients for laboratory work. Petitioners agreed with Community Clinical Laboratory, Inc. (CCL) that they would recommend CCL’s clinical services to physicians in return for which CCL agreed to pay to petitioners, as a commission, a percentage of the fees CCL received as a result of petitioners’ referrals. CCL routed the referral commissions through another corporation, Brookhaven Clinical Laboratory, Inc., which in turn paid the commissions to petitioners in the form of "consulting fees”.
Petitioners claim that, prior to their agreement with CCL, CCL’s president had assured them that an attorney consulted by CCL had advised CCL’s president that the arrangement was legal. It appears that petitioners made no further inquiry into the propriety of the arrangement, or the reasoning behind the circuitous method of payment.
Petitioners collected nearly $200,000 in "consulting fees” before abandoning the arrangement in 1989. Petitioners claim that none of the referrals involved Medicaid funds.
The arrangement with CCL came to the attention of the authorities, and charges were brought against petitioners. In April 1993, petitioners pleaded guilty to a misdemeanor violation of General Business Law § 801 (1), now set forth as section 587 (1) of the Public Health Law,[1] for their role in the arrangement with CCL. In relevant part, General Business Law former § 801 (1) provided that: "No health services purveyor * * * shall solicit, receive, accept or agree to * * * accept any payment or other consideration in any form to the extent such payment or other consideration is given for the referral of services or participate in the division, transference, *206 assignment, rebate [or] splitting of fees, with any clinical laboratory or its agent [in relation to clinical laboratory services].” By a letter dated May 10, 1993, DSS notified each of the petitioners that the agency had decided to exclude them from further participation as Medicaid providers.[2] The letter further stated that petitioners may request reinstatement with the program two years from the date of the notice. DSS’ determination rested upon an application of a DSS regulation authorizing the department to immediately exclude a person from participating in Medicaid upon notification that the person has been convicted of a crime which relates to or results from the furnishing of, or billing for, medical care or services. (18 NYCRR 515.7 [c].)
Petitioners thereafter brought this proceeding and the court temporarily enjoined DSS from enforcing its determination until a decision was reached on the merits of petitioners’ application.
DISCUSSION
In reviewing an agency’s determination, the court "cannot substitute its [own] judgment for that of the responding] agency; its function is solely to decide whether the agency’s determination was arbitrary and capricious.” (Matter of Broadway Catering Corp. v New York State Liq. Auth., 106 Misc 2d 1025, 1026 [Sup Ct, NY County 1980].) An action is arbitrary if it "is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].)
This proceeding concerns whether DSS improperly applied the regulation (18 NYCRR 515.7 [c]) to exclude petitioners from participating in Medicaid. That regulation provides that:
"(c) Upon receiving notice that a person has been convicted of a crime which relates to or results from:
"(1) the furnishing of or billing for medical care, services or supplies; or
"(2) participation in the performance of management or administrative services relating to furnishing medical care, services or supplies, the department may immediately exclude the person and any affiliates from participation in the program.”
*207 On its face, section 515.7 (c) is not limited to situations where a provider is convicted of a crime involving medical care or services funded by Medicaid and appears to be designed to protect the Medicaid system from potential abuse before funds are misused. Therefore, petitioners’ threshold argument that section 515.7 (c) is inapplicable because their crime did not involve Medicaid funds is unpersuasive. DSS would be entitled to invoke section 515.7 (c) if petitioners’ criminal convictions involve the furnishing of; or billing for, medical care or services regardless of the source of payment. Petitioners also are mistaken in arguing that DSS must allege a pattern of abuse. The regulation requires only that the department receive notice of a conviction and, in view of the permissive nature of the right to exclude a physician, exercise its discretion properly.
Petitioners’ primary argument is that DSS’ determination is arbitrary and capricious because it is based on factual error. They claim that the crime to which they pleaded guilty is not related to the furnishing of or billing for medical care or services, and, therefore, that DSS’ reliance on their convictions is without regard to the facts.
Petitioners’ argument is without merit. Notwithstanding their contention that they simply made referrals for colleagues asking for a reliable laboratory, their arrangement with CCL could well be described as trading recommendations for consideration. That is, in return for giving the laboratory the opportunity to furnish, and bill for, a medical service to a patient, petitioners were paid, albeit indirectly, by the laboratory. That this analysis is rationally related to the regulation is supported by the plain language of the crime to which petitioners pleaded guilty, in that it addresses payments or other consideration received as commissions for a referral. (General Business Law former § 801 [1].) Therefore, respondent’s determination that each petitioners’ crime was related to the furnishing of, or billing for, medical care or services was based in reason and taken with regard to the facts.
Finally, petitioners argue that the sanction of a two-year exclusion, at a minimum, is unduly harsh. (See, Schaubman v Blum, 49 NY2d 375 [1980].) Section 515.7 (c) permits immediate exclusion when DSS receives notice that a provider has been convicted of a crime which relates to the furnishing of, or billing for, medical care or services. The question is whether a minimum two-year exclusion is excessive under *208 petitioners’ circumstances. In reviewing whether the penalty is excessive, the court’s inquiry "is limited to a consideration of whether such penalty is ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness”.’ ” (Schaubman v Blum, 49 NY2d, at 379, quoting Matter of Pell v Board of Educ., 34 NY2d, at 233, supra.)
Petitioners premise their argument that the penalty is excessive on two factors. First, petitioners argue that they violated General Business Law former § 801 (1) "inadvertently”, and, therefore, a lesser sanction is more appropriate. Petitioners concluded that their actions were lawful from the alleged representation by CCL’s president that its attorney had reviewed the arrangement and deemed it legal. This argument is rejected. The appropriate forum for raising this issue was in the criminal case. Petitioners admitted the requisite criminal intent when they entered a guilty plea, and petitioners’ criminal intent will not be reconsidered here.
The second factor petitioners raise in arguing that the sanction is excessive is that DSS’ decision is based on a single offense rather than a pattern of offenses or multiple offenses as occurred in other cases where DSS imposed a similar sanction. (See, e.g., Clin Path v New York State Dept. of Social Servs., 193 AD2d 1034 [3d Dept 1993].) However, section 515.7 (c) does not require that the department find multiple offenses before excluding a provider from Medicaid; it requires only that the department receive notice of a crime covered in the regulation. The inquiry is thus limited to whether a two-year exclusion is shocking to one’s sense of fairness where there is a single health care related conviction of the nature here involved. (Schaubman v Blum, 49 NY2d 375, 379, supra.)
In Schaubman (supra), a permanent exclusion from Medicaid was imposed on a pharmacist who overcharged Medicaid $3.39 on a single prescription. (Supra.) The Court’s opinion stated that DSS must be allowed broad discretion in fashioning administrative sanctions which can adequately protect the public’s interest in assuring that Medicaid funds will not be diverted fraudulently into the hands of an untrustworthy provider. (Supra, at 379, 380.) The Court noted that the administrative penalty did not prevent Schaubman from practicing as a pharmacist, rather it terminated the contractual relationship between Schaubman and DSS that had allowed him to participate in the Medicaid program. (Supra, at 380.) The Court further noted that such participation is a privilege, *209 not a vested right and that the privilege may be revoked in proper circumstances. (Supra.)[3] The Court of Appeals in Schaubman determined that the penalty permanently excluding Schaubman and his pharmacy from participating in Medicaid was a proper response undertaken to protect the public’s interest in the integrity of the Medicaid program. (Supra.)
In light of the Schaubman decision (supra), it cannot be said that the penalty imposed here is excessive. Rather than one modest defalcation, many dollars and many transactions occurred over time, all contrary to law.
In view of the above, petitioners’ application for article 78 relief is denied, and the petition is dismissed. All stays enjoining the respondent from enforcing its determination are likewise vacated.

. The recodification by the New York State Legislature occurred in 1992. The differences in wording are insignificant.

. Petitioners appealed the determination to exclude them from Medicaid, and DSS denied their appeal.

. Since Schaubman (supra), DSS codified the "at will” nature of the contractual relationship between the agency and providers in 18 NYCRR 504.7 (a) (eff Jan. 5, 1987).